**UNITED STATES of America, Plaintiff—Appellee,**

v.

**De Elroy BEELER, Defendant—Appellant.**

No. 00–50640.

D.C. No. CR–99–00489–WJR–1.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Feb. 4, 2002.

Decided Feb. 8, 2002.

Before PREGERSON, RYMER and T.G. NELSON, Circuit Judges.

MEMORANDUM *

De Elroy "Rusty" Beeler appeals his conviction for making false statements to financial institutions in violation of 18 U.S.C. § 1014, and his sentence. We reverse and remand for resentencing on Counts one through eight under the proper edition of the Guidelines Manual; otherwise we affirm.

I

Beeler argues that there was insufficient evidence to support the jury's finding that Beeler submitted a fraudulent loan pack-

---

* This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as may be provided by Ninth Circuit Rule 36–3.

age to Lockheed within the relevant time period. As he failed to move for acquittal, our review is for plain error. *See United States v. Morgan,* 238 F.3d 1180, 1186 (9th Cir.2001).

The evidence was more than sufficient for a reasonable jury to conclude that Beeler submitted his fraudulent loan package to Lockheed on or after May 14, 1989. Beeler's loan broker was retained on May 10, 1989; the state court did not expunge a lis pendens on Beeler's property until May 8, 1989 (certified on May 18, 1989); and Beeler admitted in a 1992 declaration that he applied for a commercial loan from Lockheed "[o]n or about June, 1989." Both Reagan and Merkerson testified that Lockheed received Beeler's loan application sometime between May 14 and May 22. Thus, there was no error in allowing the jury to find that Beeler submitted his fraudulent loan application to Lockheed on or after May 14, 1989.

## II

Beeler argues that under the instructions, the jury could have found that he submitted the loan package "on or about" the date alleged in the indictment rather than after May 14, 1999. Absent objection, we review the instructions for plain error, *United States v. Fuchs,* 218 F.3d 957, 961 (9th Cir.2000); viewing them as a whole, as we must, *United States v. Powell,* 955 F.2d 1206, 1210 (9th Cir.1991), there is no such error.

The court instructed that for Beeler to be found guilty of the loan fraud charges in Counts one through eight, the government must prove that "the false statement was submitted to the financial institution or credit union on or *after* May 14, 1989." (emphasis added). In explaining the indictment, which charged that the offenses were committed "on or about" May 15, 1989, the court indicated that it was not

necessary for the government to prove that the offenses were committed precisely on that date. Thus, the jury could have found that Beeler submitted false documents on some date other than May 15 so long as it was on or after May 14. Particularly given the defense theory that the package was submitted in March, this is not plainly erroneous.

## III

Beeler made no objection to the Presentence Report, which included loan fraud in connection with the Lancaster Property, misappropriating Whisman's identity, and abuse of the bankruptcy process as relevant conduct. He now claims that these incidents lack sufficient similarity, regularity, and temporal proximity to qualify under U.S.S.G. § 1B1.3(a)(2).

The district court did not plainly err in calculating total loss based on the Lancaster property and misappropriation of Whisman's identity. Only six months separated the Lockheed loan and the Lancaster fraud, which is not significant given that different financial institutions and paperwork were required. *See United States v. Rose,* 20 F.3d 367, 371 (9th Cir. 1994) (complex money laundering activities occurred over three-year period); U.S.S.G. § 1B1.3(a)(2), cmt. (failure to file tax returns in three consecutive years part of same course of conduct). The two loans were obtained by the same *modus operandi. See Rose,* 20 F.3d at 371. In both, Beeler misrepresented his legal identity and level of wealth; with respect to the Lockheed loan, he claimed to be the Executive Vice–President of a thriving company, and as to the Lancaster loan, Beeler falsely asserted that he had assumed the trusteeship of his father's property. He also informed each financial institution that he would use the proceeds from the loan to refinance the respective piece of

property and then redevelop it into a mini-mart.

Likewise, Beeler's use of Whisman's identity is part of the "same course of conduct" as the fraudulent automobile loan applications he submitted to Chase. *See* U.S.S.G. § 1B1.3(a)(2), cmt. (defining "same course of conduct" as offenses that "are sufficiently connected or related to each other as to warrant the conclusion that they are part of a single episode, spree, or ongoing series of offenses"). Whisman was a victim of each scheme. Beeler appropriated Whisman's identity to obtain a car loan from Chase as well as to incur large amounts of debt on a joint credit card, which Beeler induced Whisman to sign by promising him that he would never use it. Just as Beeler's false presentation of himself as an executive officer of a successful corporation (RCC) induced Chase to loan him money, it also induced Whisman to cosign with Beeler on a credit card and car loan, which in turn resulted in crippling financial liability for Whisman. Finally, Beeler's fraudulent representations to Whisman occurred over the same period of time in 1993 as did his fraudulent loan applications to Chase.

While we affirm the loss calculation, we have difficulty reviewing whether the bankruptcy filings were properly treated as relevant conduct because it is unclear upon which ones the district court relied. As we must remand for resentencing in any event, we vacate the enhancement based on abuse of judicial process.

## IV

The government concedes that application of the 1993 Sentencing Guidelines Manual to the offenses committed in counts 1 through 8 (which were committed before the issuance of a November 1, 1989 Guidelines amendment that increased the punishment for those offenses) resulted in a violation of the Ex Post Facto Clause that affected Beeler's substantial rights. Under *United States v. Ortland*, 109 F.3d 539, 546–47 (9th Cir.1997), the sentencing judge must use two versions of the guidelines where a defendant is convicted of multiple offenses, some of which were completed before an amendment to the guidelines was enacted and some of which were completed afterwards. Also, the sentencing enhancements for minimal planning and violation of judicial process were alternative rather than cumulative under the version of the Guidelines that became effective November 1, 1987, which could further decrease Beeler's sentence. Accordingly, Beeler must be resentenced on Counts one through eight.

We therefore affirm Beeler's conviction; affirm the loss calculation for purposes of sentence; vacate the enhancement for abuse of process; and reverse and remand for resentencing on Counts one through eight.

AFFIRMED IN PART; REVERSED AND REMANDED IN PART.